IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| KATHRYN V. ERICKSON,<br><br>Petitioner,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | MEMORANDUM DECISION AND ORDER DENYING PETITIONER'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE UNDER 28 U.S.C. § 2255<br><br><br>Civil Case No. 2:10-CV-256 TS<br><br>Criminal Case No. 2:05-CR-521 TS |

This matter is before the Court on Petitioner's Motion to Vacate, Set Aside, or Correct Sentence, pursuant to 28 U.S.C. § 2255.[1] Petitioner is proceeding *pro se* in this matter. Having considered the pleadings and the record before it, the Court finds that all of Petitioner's arguments, and their underlying bases, do not establish appropriate grounds upon which to justify relief under § 2255. Based upon the reasons set forth more fully below, the Court will deny the Motion and dismiss this case.

---

[1]Case No. 2:10-CV-256 TS, Docket Nos. 1 & 5.

1

I. BACKGROUND

On July 20, 2005, Petitioner was named in a three-count Indictment, charging her with obstructing and impeding a federal grand jury in violation of 18 U.S.C. § 1503. On January 3, 2007, a Superseding Indictment was returned, charging Petitioner and her co-Defendant, with three violations of 18 U.S.C. § 1503. Petitioner and her co-Defendant proceeded to trial on January 22, 2007. On January 26, 2007, a jury returned a guilty verdict, convicting Petitioner on all three counts. Petitioner was sentenced, on January 8, 2008, to 30 months probation.

Petitioner appealed her conviction to the Tenth Circuit Court of Appeals. Petitioner's conviction was affirmed on April 6, 2009.[2] Petitioner sought a writ of certiorari from the United States Supreme Court, which was denied on October 5, 2009.[3] Petitioner timely filed her § 2255 Motion on March 22, 2010. Petitioner then filed an Amended Motion, adding two claims, on April 5, 2010.[4] The government has responded to Plaintiff's Motion and Amended Motion. Petitioner has filed a reply brief and a declaration. This matter is now ripe for decision by the Court.

---

[2] *United States v. Erickson*, 561 F.3d 1150 (10th Cir. 2009).

[3] Case No. 2:05-CR-521 TS, Docket No. 220.

[4] Because Petitioner's Amended Motion was filed within the one-year limitations period, the Court may consider the two additional claims contained therein. *See United States v. Espinoza-Saenz*, 235 F.3d 501, 505 (10th Cir. 2000) (holding that "an *untimely* amendment to a § 2255 motion which, by way of additional facts, clarifies or amplifies a claim or theory in the original motion may, in the District Court's discretion, relate back to the date of the original motion if and only if the original motion was timely filed and the proposed amendment does not seek to add a new claim or to insert a new theory into the case" (emphasis added)).

II.  DISCUSSION

Petitioner brings 12 claims in her Motion and Amended Motion, all of which allege ineffective assistance of counsel.  The Court will discuss each of Petitioner's claims below.

"To demonstrate ineffectiveness of counsel, [Petitioner] must generally show that counsel's performance fell below an objective standard of reasonableness, and that counsel's deficient performance was prejudicial."[5]  To successfully claim ineffective assistance then, Petitioner must show two things.  First, she must show that counsel's performance was deficient.[6]  "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed [Petitioner] by the Sixth Amendment."[7]  Second, she must show that counsel's deficient performance prejudiced Petitioner's defense.[8]  "This requires showing that counsel's errors were so serious as to deprive [Petitioner] of a fair trial, a trial whose result is reliable."[9]  Without both of these showings, Petitioner may not prevail in arguing that his conviction "resulted from a breakdown in the adversary process that renders the result unreliable."[10]

---

[5]*United States v. Lopez*, 100 F.3d 113, 117 (10th Cir. 1996) (citing *Strickland v. Washington,* 466 U.S. 668, 687, 690 (1984)).

[6]*Strickland*, 466 U.S. at 687.

[7]*Id*.

[8]*Id*.

[9]*Id*.

[10]*Id*.

A Court is to review Petitioner's ineffective assistance of counsel claim from the perspective of his counsel at the time he or she rendered the legal services, not in hindsight.[11] In addition, in evaluating counsel's performance, the focus is not what is prudent or appropriate, but only what is constitutionally compelled.[12] Finally, there is "a strong presumption that counsel provided effective assistance, and a section 2255 defendant has the burden of proof to overcome that presumption."[13]

Petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"[14] The Supreme Court has stated:

> strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.[15]

The Tenth Circuit has held that "[s]trategic or tactical decisions on the part of counsel are presumed correct, unless they were completely unreasonable, not merely wrong."[16]

---

[11] *Hickman v. Spears*, 160 F.3d 1269, 1273 (10th Cir. 1998).

[12] *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984).

[13] *United States v. Kennedy*, 225 F.3d 1187, 1197 (10th Cir. 2002).

[14] *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

[15] *Id*. at 690-91.

[16] *Moore v. Marr*, 254 F.3d 1235, 1239 (10th Cir. 2001) (citations and quotation omitted).

A.　　CLAIM ONE

Petitioner's first claim is that counsel was ineffective for failing to interview and call a witness who would have vouched for Petitioner's whereabouts on the evenings that the change orders were altered. In support of this claim, Petitioner has provided an email that this witness sent to Petitioner's counsel, and others on the defense team, indicating that the witness helped Petitioner transport and bates stamp certain documents in early August, presumably of 2000, though the email does not specify. The government has countered with the declaration of Petitioner's trial counsel. That declaration reveals a close working relationship between Petitioner, her counsel, and the defense team. Defense counsel states that she or her investigators contacted, or attempted to contact, each witness Petitioner suggested and conducted a large number of interviews. Counsel, however, does not recall Petitioner revealing an alibi witness.

The Court finds that Petitioner has failed to show that counsel's performance was deficient. Rather, counsel's decision not to interview and call this particular witness fell "within the wide range of reasonable professional assistance."[17] Further, even if the Court found counsel performed deficiently, Petitioner has not met her burden of showing she was prejudiced by counsel's failure to interview and call this witness. While Petitioner would suggest that this witness would provide an alibi, the evidence before the Court does not go that far. The only relevant information this witness could have provided is that she was with Petitioner during the same time period the offense occurred. Put simply, Petitioner has failed to show that the result of the proceeding would have been different if her counsel interviewed and called this witness.

---

[17] *Strickland*, 466 U.S. at 689.

B.  CLAIM TWO

Petitioner next claims that her counsel was ineffective in her cross-examination of Cheri McCurdy. Petitioner's argument is belied by the record. The record reveals that counsel did conduct a lengthy and vigorous cross-examination of Ms. McCurdy.[18] Specifically, Ms. McCurdy was confronted with statements she had made in a deposition, in her diary, and to FBI agents. Cross examination also suggested that Ms. McCurdy's testimony was motivated by her desire to keep her health insurance and remain employed. Ms. McCurdy was also examined at length by counsel for Petitioner's co-Defendant.[19] Reviewing the transcript of Ms. McCurdy's cross-examination, the Court cannot find counsel was ineffective. While Petitioner suggests that counsel could have done more, that is not the question before the Court. Rather, the only question is whether counsel's performance was constitutionally deficient. The Court cannot conclude that it was. The Court finds that counsel's cross-examination fell within the wide range of reasonable professional assistance. Further, Petitioner has failed to show how she was prejudiced by counsel's allegedly deficient cross-examination.

C.  CLAIM THREE

Petitioner's third claim, though less than clear, appears to assert that counsel was ineffective for failing to call Petitioner as a witness.

> A criminal defendant has a constitutional right to testify in his own behalf at trial. The decision whether to testify lies squarely with the defendant; it is not counsel's decision. Defense counsel should inform the defendant that he has the right to

---

[18] Case No. 2:05-CR-521 TS, Docket No. 192 at 195-230.

[19] *Id.* at 230-62.

testify and that the decision whether to testify belongs solely to him. Counsel should also discuss with the defendant the strategic implications of choosing whether to testify, and should make a recommendation to the defendant. Yet counsel lacks authority to prevent a defendant from testifying in his own defense, even when doing so is suicidal trial strategy.[20]

In her Motion, Petitioner alleges that it was her intent to testify and that she began preparations to testify. Petitioner goes on to state that counsel advised Petitioner that testifying was not in Petitioner's best interest. As a result, Petitioner informed the Court that she would not testify. The declaration of Petitioner's counsel reveals that it was anticipated that Petitioner would testify. However, during the course of trial, counsel advised Petitioner that testifying did not appear to be in Petitioner's best interest. At all times, counsel made clear that it was Petitioner's decision whether or not to testify.

During trial, the Court engaged in the following colloquy with Petitioner and her co-Defendant:

> THE COURT: It would appear, Ms. Erickson and Mr. Mitchell, that you do not intend to testify. I am obligated to just give you this little instruction, okay, and ask you the following questions. You understand, don't you, Ms. Erickson, Mr. Mitchell, that you do have the constitutional right to both testify and not testify? And I am asking whether or not you have discussed that fact with Ms. Lewis in your case. Ms. Erickson, have you done so?
> MS. ERICKSON: I have.
> THE COURT: Mr. Mitchell, have you discussed that with Mr. Weiss?
> MR. MITCHELL: Yes, sir.
> THE COURT: Do you both understand that the decision whether or not you will or will not testify is entirely up to you? It is not for your attorney to direct you. Do you understand that, Ms. Erickson?
> MS. LEWIS: I don't think she heard you. She was asking me a question.

---

[20]*Cannon v. Mullin*, 383 F.3d 1152, 1171 (10th Cir. 2004).

> THE COURT: Ms. Erickson, the question is do you understand that the decision whether or not you will or will not testify is yours, it's not for Ms. Lewis or Ms. James, it is for you and you alone. Do you understand that?
> MS. ERICKSON: I do.
> THE COURT: Mr. Mitchell, do you understand that as well?
> MR. MITCHELL: Yes, sir.
> THE COURT: Ms. Erickson, have you made what you would consider an informed decision that you do not want to testify?
> MS. ERICKSON: At this time I have made that decision.
> THE COURT: Mr. Mitchell, have you?
> MR. MITCHELL: Yes, Your Honor.
> THE COURT: Do either of you have any questions from the Court about your constitutional right to testify or not testify? Ms. Erickson, do you? Do you have any questions of the Court about your constitutional right to either testify or not testify?
> MS. ERICKSON: I don't know what I would ask.
> THE COURT: Mr. Mitchell, do you have any questions?
> MR. MITCHELL: No, sir.
> THE COURT: Thank you both.[21]

Based upon the record before, the Court cannot find that Petitioner's counsel was deficient. It is undisputed that counsel discussed the implications of whether to testify, ultimately recommending against testifying. However, Petitioner does not dispute that counsel informed Petitioner that it was ultimately her decision. She confirmed this in open court. When asked by the Court if she wished to testify, Petitioner responded negatively. Therefore, the Court finds that counsel's performance was not deficient. Moreover, Petitioner has failed to show prejudice as she has failed to identify what information she would testify about and how that would have affected her case.

---

[21]Case No. 2:05-CR-521 TS, Docket No. 194 at 501-02.

D.   CLAIM FOUR

Petitioner's fourth claim alleges that her counsel was ineffective for failing to conduct ink and pen stroke analysis on the change order forms at issue in Petitioner's trial. Petitioner contends that counsel failed to perform this analysis because of the cost involved. Counsel, however, states that ink and pen stroke was not an issue and that counsel never saw a need for it, or any advantage that could be gained from such analysis, as the documents at issue were photocopies.

The Court finds that counsel was not ineffective for failing to conduct ink and pen stroke analysis on the change order forms. This is precisely the type of strategic decision that is entitled to deference.

E.   CLAIM FIVE

Petitioner's fifth claim is that counsel was ineffective in her cross-examination of Merlin Sinfield. Petitioner specifically complains that counsel did not cross-examine Mr. Sinfield on his statement that Petitioner could not spend more than $1,000.

Having reviewed the record, the Court finds that counsel effectively cross-examined Mr. Sinfield, especially on the important issue of the duties and authority of the general manager of the Uintah Special Services District ("USSD"), a post held by Petitioner at the time of the offense.[22] While Petitioner complains that counsel should have done more, the Court finds that counsel's cross-examination fell within the wide range of reasonable professional assistance. Further, Petitioner has failed to show how she was prejudiced by counsel's allegedly deficient

---

[22] Case No. 2:05-CR-521 TS, Docket No. 192 at 284-94.

cross-examination. There is nothing to suggest that further examination on this issue would have resulted in a different outcome.

F.      CLAIM SIX

Petitioner's sixth claim argues that counsel was ineffective for failing to adequately challenge witnesses who were given immunity. Petitioner does not identify the witnesses to whom she refers and the government has stated that no witnesses were provided immunity in this case.

Petitioner also claims that counsel was deficient for failing to have the jury listen to a phone call between two of the witnesses: Lonnie Robertson and Adam Massey. Petitioner also complains that counsel did not read the transcript of the tape into the record. While it is true that the tape was not played and the transcript was not read into the record, the transcript was admitted into evidence[23] and counsel questioned Mr. Massey about the phone conversation at length.[24] Therefore, Petitioner's claims in this regard are without merit. Petitioner's counsel did effectively challenge both of these witnesses' credibility through use, and eventual admission, of the transcript of the phone call that took place between these witnesses. Further, Petitioner has shown no prejudice because of the fact that the transcript was admitted, rather than being read into evidence or having the tape played.

---

[23]Case No. 2:05-CR-521 TS, Docket No. 193 at 375.

[24]*Id*. at 369-90.

G.   CLAIM SEVEN

Petitioner's seventh claim is that her counsel was ineffective because she presented no defense on Petitioner's behalf, only conducted minor cross-examinations of the government's witnesses, failed to use documents for impeachment purposes, and failed to interview witnesses. The Court finds that such vague and conclusory allegations are insufficient to meet Petitioner's burden. Petitioner does not identify which witnesses counsel failed to effectively cross-examine and how counsel could have done more. Nor does Petitioner identify any documents counsel could have, or should have, introduced during cross examination. Finally, Petitioner has not identified particular individuals that counsel should have interviewed or called as witnesses. Without this, the Court cannot find that counsel was deficient, nor can the Court find that Petitioner was prejudiced by counsel's alleged failures.

H.   CLAIM EIGHT

Petitioner's eighth claim argues that counsel was ineffective for failing to clarify, impeach, or correct a statement by one of the witnesses, Bruce Reading, referring to a meeting with various individuals as a meeting with "Kate and gang."[25] Mr. Reading went on to state that the "gang" was likely comprised of Petitioner, Lonnie Hogan, and Gil Mitchell and that the reference to the group as a "gang" was "a colloquialism."[26] The government then referenced Petitioner and "her gang" during closing arguments.[27]

---

[25] *Id*. at 479.

[26] *Id*. at 480.

[27] Case No. 2:05-CR-521 TS, Docket No. 194 at 573, 578, 580.

The Court cannot find that counsel's performance was deficient for failing to clarify, impeach, or correct the statement regarding Petitioner and her "gang." It was made clear during Mr. Reading's testimony that this was a colloquialism and was merely a familiar way of referring to a specific group of people. Therefore, the negative connotation that Petitioner attributes to this statement simply did not exist at trial. If counsel did address the issue, as suggested by Petitioner, it could have brought undue attention to a relatively harmless statement, thereby causing more prejudice to Petitioner. Thus, counsel's determination not to address the statement appears to be a strategic decision and falls within the wide range of reasonable professional assistance. Further, Petitioner has failed to show how she was prejudiced by counsel's alleged failures. The reference to "Kate and gang" was relatively innocuous and, as stated, bringing more attention to these statements could have been much more damaging.

I.  CLAIM NINE

Petitioner's ninth claim alleges that counsel committed numerous errors that were detrimental to Petitioner's defense. As with Petitioner's seventh claim, such conclusory allegations are insufficient to show either deficient performance or prejudice. The only specific reference that is made is to counsel and the Court engaging "in an ongoing battle which resulted in unfavorable rulings from the bench."[28]

---

[28] Case No. 2:10-CR-256 TS, Docket No. 1 at 10.5.

On direct appeal, Petitioner raised the issue of alleged bias by the Court.[29] The Tenth Circuit thoroughly reviewed Petitioner's claims and rejected them.[30] "An issue disposed of on direct appeal will generally not be reconsidered on a collateral attack by a motion pursuant to 28 U.S.C. § 2255. However, a motion under Section 2255 may be proper when there was been an intervening change in the law of a circuit."[31] Here, this issue was raised on direct appeal and Petitioner points to no intervening change in the law of this circuit. Therefore, the Court finds that this claim is procedurally barred.

J.  CLAIM TEN

Petitioner's tenth claim consists of a number of different claims: counsel allowed co-Defendant's counsel to take the lead; counsel told Petitioner and others that she believed Petitioner was innocent; counsel stated the government could not prove its case; the Federal Defender's office did not have the resources to investigate Petitioner's case; counsel hurried the trial so that she could take her children skiing; and counsel presented no evidence regarding Petitioner's life.

Counsel addresses these issues in her declaration. Counsel explains that she and co-Defendant's counsel developed a strategy whereby each would be the lead examiner of witnesses more closely associated with their clients and would select exhibits accordingly. Counsel states

---

[29] *Erickson*, 561 F.3d at 1166.

[30] *Id.* at 1166-69.

[31] *United States v. Nolan*, 571 F.2d 528, 530 (10th Cir. 1978) (internal citations omitted); *see also United States v. Prichard*, 975 F.2d 789, 791 (10th Cir. 1989) ("Absent an intervening change in the law of a circuit, issues disposed of on direct appeal generally will not be considered on a collateral attack by a motion pursuant to § 2255.").

that she did, in fact, believe Petitioner was innocent and told her so. Counsel does not recall stating that the government had no case, but did indicate to Petitioner that the odds might be slightly in her favor and that there was some possibility of acquittal. Counsel did, however, make clear the risks associated with going to trial. Counsel states that expense of an investigation is not an obstacle in the Federal Defender's Office and has detailed the steps taken to investigate Petitioner's case. Counsel states that she would never have allowed a ski trip to interfere with the trial or the presentation of evidence. Finally, counsel states that many issues concerning Petitioner's life were not brought up because they were not at issue, but the fact that Petitioner was a single mother and had never been in trouble with the law were addressed at trial.

The Court cannot find that counsel was deficient when structuring the trial strategy between herself and co-Defendant's counsel. As explained by counsel, she and counsel for co-Defendant developed a sound trial strategy, with each focusing on those witnesses that were most relevant to their particular client. By doing so, counsel could effectively focus in on those witnesses and issues that were critical to their own defense. Such a strategy is precisely the type of decision within the wide range of reasonable professional assistance. Further, Petitioner has shown no prejudice as a result of counsel's decision to so operate.

The Court can find no deficient performance as a result of counsel telling Petitioner that she believed Petitioner was innocent. Indeed, such a belief on behalf of counsel would likely spur a more effective performance, rather than less. Further, there is no showing that Petitioner was prejudiced by counsel's belief in her innocence. Again, such a belief would likely help, rather than hinder.

For the same reasons, counsel's alleged statement that the government could not prove its case was neither deficient nor prejudicial.

If, as Petitioner suggests, the Federal Defender's office did not have the resources to investigate Petitioner's case, this would likely be both deficient and prejudicial. However, Petitioner supports this claim with only conclusory allegations. Counsel, on the other hand, has detailed the steps taken to investigate this matter and prepare for trial. Therefore, the Court finds that Petitioner has failed to meet her burden of showing her counsel was ineffective on this ground.

Petitioner's claim that counsel hurried the trial so that she could take her children skiing fails for the same reason.

Finally, Petitioner's claim that counsel presented no evidence regarding Petitioner's life must fail. Much of the evidence Petitioner argues should have been addressed was simply irrelevant to the issues at trial and, therefore, would likely have been excluded. Further, it was brought out at trial that Petitioner is a single mother and that she has never been in trouble with the law. Therefore, the Court cannot find counsel's performance was deficient and Petitioner has failed to show prejudice.

K.   CLAIMS ELEVEN AND TWELVE

Petitioner's eleventh and twelfth claims revolve around Petitioner's claims that counsel failed to use the minutes of the USSD board meeting to impeach certain witnesses and failed to address the authority of the general manager, a position Petitioner held at the time of the offense.

Petitioner's claim is incorrect. Counsel for both Defendants and the government did, in fact, examine witnesses concerning the board minutes and the authority of the general manager.[32] Further, Petitioner has failed to show any prejudice as a result of counsel's alleged failures.

Petitioner also argues that counsel was ineffective for failing to retrieve a computer hardware. Even if the Court were to find counsel's performance deficient, Petitioner has failed to show prejudice. Petitioner offers nothing more than speculation that analysis of the hard drive would have provided any evidence relevant to her case, let alone evidence that would have resulted in a different outcome.

### III. CONCLUSION

Based upon the above, it is hereby

ORDERED that Petitioner's § 2255 Motion and Amended Motion (Docket Nos. 1 & 5 in Case No. 2:10-CV-256 TS) are DENIED for the reasons set forth above. It is further

ORDERED that, pursuant to Rule 8(a) of the Rules Governing § 2255 Cases, an evidentiary hearing is not required.

The Clerk of Court is directed to close Case No. 2:10-CV-256 TS forthwith.

SO ORDERED.

DATED   March 25, 2011.

BY THE COURT:

_____
TED STEWART
United States District Judge

---

[32]Case No. 2:05-CR-521 TS, Docket No. 192 at 291-92, 300-06, 307-10.